**JP MORGAN CHASE BANK, N.A., Plaintiff,**

v.

**LAW OFFICE OF ROBERT JAY GUMENICK, P.C., et al., Defendants.**

**No. 08 Civ. 2154 (VM).**

United States District Court, S.D. New York.

May 27, 2010.

**538**

Stephen Michael Packman, Archer & Greiner, PC, Haddonfield, NJ, for Plaintiff.

Eli Saul Cohn, McDonough, Marcus, Cohn, Heller & Kanca, New Rochelle, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

At the Court's telephonic conference on May 11, 2010 with the parties to this ac-

tion, defendants Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick (collectively, "Gumenick Defendants") requested leave to file a motion for summary judgment on plaintiff J.P. Morgan Chase Bank, N.A.'s ("JP Morgan") legal malpractice claims arising out of a mortgage transaction known as the Hartford Loan (the "Hartford Loan"). The Court directed the parties to submit letter-briefs addressing factual and legal issues raised by Gumenick Defendants' contention that there are no genuine issues as to any material fact and that the Court can thus dispose of JP Morgan's Hartford Loan claims as a matter of law.[1] *See* Fed.R.Civ.P. 56; *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996) ("[S]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication."). This case is currently in discovery, and pursuant to the Court's Scheduling Order, dated April 14, 2010, all fact discovery is to be completed by August 31, 2010.

Gumenick Defendants argue that they are entitled to summary judgment because New York law governs the dispute, and, as a result, the three-year statute of limitations period applicable to attorney malpractice claims has expired as to JP Morgan's Hartford Loan claims. In addition, Gumenick Defendants contend that, even if the limitations period has not expired, JP Morgan has no standing to pursue its Hartford Loan claims since Washington Mutual Bank ("WaMu"), which originally retained Gumenick Defendants to perfect a mortgage on the property in question, did

---

1. For the purposes of its ruling on the instant request, the Court considers the following submissions: a letter-brief from Gumenick Defendants, dated May 13, 2010 (the "Dfts.' May 13 Letter"), asserting the factual grounds and legal theories and authorities supporting their proposed application for summary judgment on the Hartford Loan; a letter-brief

from JP Morgan dated May 19, 2010 ("JP Morgan's Letter"), opposing Gumenick Defendants' request for leave to file a motion for summary judgment on the Hartford Loan; and an additional letter-brief from Gumenick Defendants, dated May 21, 2010, replying to JP Morgan's Letter (the "Dfts.' Reply Letter").

not sell or transfer the malpractice claims to JP Morgan along with the Hartford Loan.

JP Morgan responds that, having acquired the Hartford Loan and all claims arising out of the Hartford Loan from WaMu, it has standing to pursue its Hartford Loan claims against Gumenick Defendants. JP Morgan also contends that Connecticut law governs the dispute because the relevant collateral property is situated in Connecticut, the closing occurred subject to Connecticut law, and the relevant injury thus occurred in Connecticut. Under Connecticut law, JP Morgan argues that it would have a viable breach of contract claim arising from Gumenick Defendants' alleged malpractice that was filed well within the six-year statute of limitations applicable to contract claims.[2] Even if New York law were to govern, JP Morgan argues that the applicable limitations period has not expired because Gumenick Defendants' acts of malpractice were continuing in nature. In sum, JP Morgan asserts that summary judgment at this stage would be premature and that the parties should be entitled to complete the discovery contemplated in this case.

■■■ The letter-briefs and the materials and authorities referenced in the submissions persuade the Court that there remain genuine issues of material fact arising from JP Morgan's Hartford Loan. Embedded in the parties' disagreement about whether New York or Connecticut law applies are sharp factual disputes. Under New York law, the relevant analytical approach to choice of law in tort actions is the "interest analysis," where "the law of the jurisdiction with the most significant interest in, or relationship to, the dispute" is applied.[3] *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir.1997). And for contract claims, New York courts typically look to the "center of gravity" of the dispute or the "grouping of contacts" in the jurisdictions at issue, unless the policies underlying conflicting laws in a contract dispute are "readily identifiable and reflect strong governmental interests." *Allstate*, 597 N.Y.S.2d 904, 613 N.E.2d at 940. Regardless of whether the center of gravity or interest analysis is applied, both require consideration of the facts and significant contacts underpinning the dispute. *See id.* ("[C]ritical to a sound [center of gravity] analysis is selecting the contacts that contain significance in the particular contract dispute."); *see also Warshay v. Guinness PLC*, 750 F.Supp. 628, 632 (S.D.N.Y.1990), *aff'd*, 935 F.2d 1278 (2d Cir.1991) ("[T]he facts or contacts which obtain significance in defining State interests are those which relate to the particular law in conflict.")

■■ Here, the parties debate essential factual underpinnings upon which the Court would need to rely to determine whether the laws of Connecticut or New

---

2. Under Connecticut law, unlike New York law, "[n]ot all claims against attorneys must necessarily be construed as tort claims." *Weiner v. Clinton*, 106 Conn.App. 379, 942 A.2d 469, 473 (2008); *compare with Chase Scientific Research, Inc. v. NIA Group, Inc.*, 96 N.Y.2d 20, 725 N.Y.S.2d 592, 749 N.E.2d 161, 162 (2001) (under New York law, "a three-year statute of limitations is applicable in nonmedical malpractice actions, regardless of whether the underlying theory is based in contract or tort."). It is this conflict in law that necessitates a choice of law analysis. *See Allstate Ins., Co. v. Stolarz*, 81 N.Y.2d 219, 597 N.Y.S.2d 904, 613 N.E.2d 936, 937 (1993) ("The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.").

3. JP Morgan brings both tort and contract claims against Gumenick Defendants arising out of the Hartford Loan. For the purposes of its ruling on the instant request, the Court will thus consider the New York choice of law rules applicable to both tort and contract claims.

York govern this dispute. Gumenick Defendants contend that the Hartford Loan "originated" and "closed in New York," and that "the only connection that Connecticut had to the transaction was that the mortgage instruments were to be filed in Connecticut." (Dfts.' Letter at 2.) By contrast, JP Morgan asserts that the Hartford Loan's intended collateral property is in Connecticut, the Hartford Loan's closing occurred subject to the laws of Connecticut, and thus the relevant injury to JP Morgan occurred in Connecticut. (*See* JP Morgan's Letter at 3.) The Court finds that the parties competing contentions regarding the Hartford Loan's jurisdictional predicates raise genuine issues of material fact that preclude summary judgment at this stage. *See Rosenzweig v. Glen's Truck Service, Inc.,* 136 A.D.2d 689, 524 N.Y.S.2d 105, 106 (2d Dep't 1988) (denying summary judgment where factual dispute precluded choice of law determination); *O.P.M. Leasing Servs., Inc.,* 28 B.R. 740, 751 (S.D.N.Y.1983) ("This court is thus persuaded by the Trustee's argument that the application of the 'center of gravity' test here involves a determination of disputed questions of material facts and cannot be accomplished as a matter of law.").

In addition, implicit in the parties' arguments regarding whether JP Morgan has standing is a material factual disagreement about whether there exists a contractual agreement or other documentary evidence that establishes JP Morgan's right to pursue its Hartford Loan claims against Gumenick Defendants. JP Morgan asserts that it "contracted with Gumenick [Defendants] to obtain a first-position lien for the bank as to the property securing the Hartford Loan," (JP Morgan's Letter at 3), whereas Gumenick Defendants counter that "JP Morgan was not a client of the Gumenick [D]efendants," (Dfts.' Reply Letter at 2.) Relatedly, the parties dispute whether JP Morgan acquired the Hartford Loan from WaMu in the first place, or whether the Federal Deposit Insurance Corporation, which acted as the receiver for WaMu's assets, retained the Hartford Loan.

Upon review of the parties' letter-briefs, the Court finds that there remain numerous genuine disputes regarding the factual underpinnings of JP Morgan's alleged acquisition of the Hartford Loan, as well as the relationship, if any, that existed between JP Morgan and Gumenick Defendants arising out of the Hartford Loan. The Court finds that these disputes, viewed in the light most favorable to JP Morgan, raise genuine issues of material fact that could be more effectively crystallized by trial evidence as developed by complete fact discovery on the Hartford Loan.

Notwithstanding the Court's findings here, the Court recognizes that it is entirely within Gumenick Defendants' prerogative to file a summary judgment motion. However, should such a motion be filed prior to the completion of fact discovery, the Court would be inclined to exercise its discretion to deny it, or to reserve judgment on it pending the development of a fuller factual record. *See* Fed.R.Civ.P. 56(f); *Carruthers v. Flaum,* 365 F.Supp.2d 448, 475 (S.D.N.Y.2005) (denying summary judgment motion, without prejudice, pending discovery).

Accordingly, it is hereby

**ORDERED** that the request of defendants Law Office of Robert Jay Gumenick P.C. and Robert Jay Gumenick for leave to file a motion for summary judgment (Docket No. 95) is denied, without prejudice to its being renewed at a later stage of this litigation following the completion of fact discovery.

**SO ORDERED.**